**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARILYN JOHNSON,

                Plaintiff,

vs.                                           Case No. 3:09-cv-492-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Marilyn Johnson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Her alleged inability to work is based on the impairments of "Back fibromy[al]gia, fainting disorder[, and] essential tremor[.]" Transcript of Administrative Proceedings (Doc. No. 8; "Tr.") at 122. On June 15, 2006, Plaintiff filed an application for DIB, alleging an onset date of disability of February 3, 2006. Tr. at 98-103. On January 24, 2008, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 23-42. On February 26, 2008, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 9-22. On April 17, 2009, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On June 3, 2009, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 6), and the Order of Reference was entered on August 13, 2009 (Doc. No. 7).

the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was sixty-one years old at the time of her hearing before the ALJ, Tr. at 26, argues the ALJ erred in two ways: (1) "by improperly stating the residual functional capacity [("RFC")] of the Plaintiff," which was determined after the ALJ erroneously discounted the opinion of Plaintiff's treating physician; and (2) "by failing to include all the limitations [in the hypothetical] that w[as] presented to the [VE]." Memorandum in Support of Complaint (Doc. No. 12; "Pl.'s Mem.") at 5, 8-10, 11 (emphasis and capitalization omitted). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings consistent with this opinion.

## **II. The ALJ's Decision**

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the individual: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the Regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. Tr. at 14-22. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since February 3, 2006, the alleged onset date." Tr. at 14. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "headache; myalgias; seizure disorder, NOS; tremors of upper extremities; disorders of spine; and status post

motor vehicle accident (December of 2005)." Tr. at 14.  The ALJ found Plaintiff's "anxiety represents a non-severe impairment." Tr. at 17 (emphasis omitted).  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  Tr. at 18.

The ALJ determined Plaintiff has the RFC "to perform sedentary work[,] except she must be able to sit/stand at will."  Tr. at 18.  In addition, "[s]he must avoid ladders or unprotected heights and operation of heavy moving machinery.  She can occasionally bend, crouch, kneel, stoop, squat, or crawl.  She must avoid unusual stress."  Tr. at 18.  At step four, the ALJ found that Plaintiff is able to perform her "past relevant work as a financial analyst/loan officer and loan processor/loan closer," because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC.]"  Tr. at 21.  The ALJ noted that Plaintiff's past relevant work "is sedentary, skilled work."  Tr. at 21.  The ALJ did not proceed to step five because of the determination that Plaintiff could perform past relevant work "as actually and generally performed."  Tr. at 21-22.  The ALJ concluded that Plaintiff was not under a disability from February 3, 2006 through the date of the Decision. Tr. at 22.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but

less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff argues the ALJ erred in two ways: (1)  by improperly determining Plaintiff's RFC; and (2) by failing to include all of Plaintiff's limitations in the hypothetical presented to the VE.  Pl.'s Mem. at 5, 11.  Each argument is addressed in turn.

### A. ALJ's Determination of Plaintiff's RFC

Plaintiff first contends the ALJ erred by "improperly stating the [RFC] of the Plaintiff." Pl.'s Mem. at 5 (emphasis and capitalization omitted).  Within this argument, Plaintiff contends that the opinion of her treating physician, Claudio E. Vincenty, M.D., was inappropriately discounted in the assessment of Plaintiff's RFC. Id. at 8-10.

Dr. Vincenty began treating Plaintiff for neck and back pain on March 3, 2006.  Tr. at 383.  At the time, Plaintiff was "a 59-year-old, white female status post remote cervical fusion

-4-

now presenting status post motor vehicle accident with increased neck pain, left radicular pain as well as low back pain." Tr. at 385.  After being advised by Plaintiff that "[p]revious attempts with physical therapy, massage therapy, heat, ice, and biofeedback have failed to improve her symptoms," Tr. at 383, Dr. Vincenty discussed with Plaintiff performing "cervical epidural steroid injections[.]"  Tr. at 385.  Thereafter, over the course of about five weeks, Plaintiff received three cervical epidural steroid injections.  Tr. at 382, 381, 380.  At a follow up visit on April 20, 2006, Plaintiff reported continuing to have "a significant amount of neck pain which was not relieved with cervical epidural steroid injective therapy."  Tr. at 379.  The epidural steroid injection procedures were "delay[ed]" at Plaintiff's request.  Tr. at 379.

On May 1, 2006, Dr. Vincenty completed an "Attending Physician's Statement" in connection with Plaintiff's claim for income protection benefits through a private insurance company.  Tr. at 377-78.  Dr. Vincenty opined Plaintiff's "Degenerative Disc Disease" was preventing Plaintiff from working.  Tr. at 377.  He noted Plaintiff had "severe neck pain w/Radiation of pain into arms[, as well as] low back pain."  Tr. at 377.  He also noted Plaintiff had undergone a "CESI series w/o [i]mprovement," and was currently on "[n]arcotic medication mgmt."  Tr. at 377.

Dr. Vincenty opined Plaintiff could sit for three hours intermittently throughout the workday, Plaintiff could stand for one hour intermittently throughout the workday, and Plaintiff could walk one hour intermittently throughout the workday.  Tr. at 378.  Plaintiff could never climb, twist, bend, stoop, or operate heavy machinery.  Tr. at 378.  Plaintiff could reach above her shoulder level "33%" of the time.  Tr. at 378.  Plaintiff could never lift or carry more than ten pounds, but she could lift or carry up to ten pounds "1-33%" of the time.  Tr. at 378. Finally, Plaintiff could perform fine finger movements and pushing/pulling "1-33%" of the time,

and could perform hand/eye coordinated movements "34-66%" of the time. Tr. at 378. Dr. Vincenty indicated it was "unknown" when, if ever, Plaintiff's capabilities would improve. Tr. at 378. Dr. Vincenty also indicated he had not advised Plaintiff that she could return to work. Tr. at 378.

On May 25, 2006, Dr. Vincenty performed another epidural steroid injection on Plaintiff. Tr. at 376. For about six months after the May 25, 2006 injection, Plaintiff "was unable to continue with the treatment plan" because she had an "insurance change and recurrent ear infections[.]" Tr. at 373. Thereafter, beginning November 27, 2006, Plaintiff underwent another series of epidural steroid injections. Tr. at 372, 370, 369. On January 29, 2007, Plaintiff reported being "pleased with her results," and she was told she would be seen again in two months "for reevaluation[,] or sooner if symptomology worsens." Tr. at 366. It was noted at that time Plaintiff was "utiliz[ing] Lortab on a p.r.n. basis" for pain. Tr. at 366.

On March 15, 2007, Dr. Vincenty wrote a letter to Plaintiff's counsel at the time, indicating that despite "improvement of her low back pain," Plaintiff "continue[d] to experience difficulty with standing for greater than 10 minutes or with prolonged sitting." Tr. at 362, 363. "Extension and rotation maneuvers tend to exacerbate her pain." Tr. at 363. Dr. Vincenty also wrote Plaintiff had "decreased range of motion with flexion, extension, and rotation of both her neck and back." Tr. at 363. Dr. Vincenty noted Plaintiff was "placed at maximal medical improvement as of January 29, 2007, with a 15% impairment rating." Tr. at 363.

At a follow up visit on March 26, 2007, Plaintiff reported being "pleased with her results." Tr. at 361. Plaintiff was directed to continue with her medication regimen and to come back in three months for a follow up visit. Tr. at 361. On June 25, 2007, Plaintiff complained of "bilateral low back and buttock pain." Tr. at 359. Plaintiff reported using or

-6-

taking the following medications: "Duragesic patch 50 meg, Lortab, Soma, Lunesta, and Wellbutrin as well as Lipitor," which were all being prescribed by Plaintiff's primary care physician. Tr. at 359. Plaintiff was informed that "the next appropriate step would be bilateral diagnostic and theraputic lumbar facet injections." Tr. at 359. Plaintiff was asked to advise Dr. Vincenty prior to her next follow up visit regarding her intended course of treatment. Tr. at 359. On July 31, 2007, Plaintiff reported having "severe low back pain with radiation into the left leg all the way down into the foot." Tr. at 357. Dr. Vincenty prescribed "Lyrica 75 mg . . . to try to minimize her neuropathic pain symptoms," as well as "Opana ER 5mg[.]" Tr. at 357. "[L]eft lumbar facet injective series times two" was to be scheduled. Tr. at 358. The last treatment note in the record from Dr. Vincenty documents a lumbar facet injection on August 3, 2007. Tr. at 355.

The Regulations instruct ALJs how to weigh the medical opinions[2] of treating physicians[3] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by

---

[2] Medical opinions are statements from physicians that reflect judgments about the nature and severity of a claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[3] A treating physician is a physician who provides medical treatment or evaluation to a claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Here, the ALJ discounted the opinion of Dr. Vincenty, giving the opinion "little weight" because it "is not consistent with the evidence of the record when considered in its entirety." Tr. at 21. The only other support for discounting Dr. Vincenty's opinion provided by the ALJ was that Dr. Vincenty is Board Certified in Anesthesiology, as opposed to treating neurosurgeon Dr. Zeal, who is Board Certified in Neurological Surgery and whose opinion the ALJ assigned "controlling weight." Tr. at 21.

The first reason for discounting Dr. Vincenty's opinion is that the opinion is inconsistent with the rest of the evidence in the record. Tr. at 21. Although the ALJ articulated a reason

for discounting the opinion of the treating physician which is recognized as a "good cause" reason, see Lewis, 125 F.3d at 1440, the ALJ did not explain this reason with any specificity, and he did not provide any evidentiary support for his reason. Cf. Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient" when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision). The lack of specific explanation or evidentiary support for the ALJ's reason to discount Dr. Vincenty's opinion frustrates judicial review.

Defendant contends in his memorandum that "[s]ubtantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Vincenty," Memorandum in Support of the Commissioner's Decision (Doc. No. 13; "Def.'s Mem.") at 7, and goes on to provide a number of reasons why the record allegedly supports such a conclusion. Id. at 7-12. Even if Defendant's reasons were accepted as true, however, the Court "cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result, or the reasons are not included in the decision." Austin v. Astrue, No. 5:07cv52/MCR/EMT, 2008 WL 2385520, at *8 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating "[w]hile [the arguments] may be true, the ALJ did

-9-

not make these findings") (citing Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994); Zblewski v. Schweiker, 732 F.2d 75, 78-79 (7th Cir. 1984); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991)).

The ALJ's second reason for discounting the opinion of Dr. Vincenty is that Dr. Vincenty is only Board Certified in Anesthesiology, as opposed to Plaintiff's treating neurosurgeon, Dr. Zeal, who is Board Certified in Neurological Surgery.[4]  Tr. at 21.  However, this is not a "good cause" reason recognized by the United States Court of Appeals for the Eleventh Circuit.  See Lewis, 125 F.3d at 1440 (stating good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records). Rather, specialization is a factor to be considered in determining how much weight an opinion should be given if it is given anything less than controlling weight.  See 20 C.F.R. § 404.1527(d)(5).  Dr. Vincenty's specialization is irrelevant to whether good cause exists to discount it.[5]

---

[4] Plaintiff seems to take some issue with the ALJ's handling of the opinion of Dr. Zeal.  See Pl.'s Mem. at 5-10.  The ALJ assigned "controlling weight" to the opinion of Dr. Zeal, noting that "Dr. Zeal had the opportunity to examine [Plaintiff] and that his opinion is supported by objective medical findings."  Tr. at 21.  Further, the ALJ stated the opinion "is also consistent with the evidence of record when considered in its entirety."  Tr. at 21.  Finally, the ALJ concluded Dr. Zeal is board certified in Neurological Surgery, "which is of the appropriate medical specialty to assess [Plaintiff's] impairments and the limitations they impose on her ability to perform work-related activities."  Tr. at 21.  Plaintiff does not specifically challenge any of these reasons as not supported by substantial evidence; rather, she contends Dr. Zeal's opinion is not the most recent one and is "based on a single evaluation in April 2006."  Pl.'s Mem. at 9 (emphasis in original).  Plaintiff concedes, however, that "[i]t is not surprising to have a single evaluation by Dr. Zeal because he is a surgeon and if surgery is not indicated, there is generally no need to continue to be treated by Dr. Zeal."  Id.  Frequency of examination is only a factor to be considered if the ALJ does not give the opinion controlling weight.  See 20 C.F.R. § 404.1527(d)(2).  Because the ALJ here gave Dr. Zeal's opinion controlling weight, the Court does not find compelling Plaintiff's observation that the opinion is based on a single evaluation.

[5] The Court notes that had the ALJ articulated with the requisite specificity a good cause reason to discount Dr. Vincenty's opinion, it would have been proper for the ALJ to consider Dr. Vincenty's specialization, along with the other factors identified in 20 C.F.R. §404.1527(d)(5), in determining the weight to afford the opinion.  The Court also notes that Plaintiff relies on a letter from Dr. Vincenty (see Pl.'s Mem. at 7), submitted after the hearing and after the ALJ's Decision, in which Dr. Vincenty indicated he is "board certified
(continued...)

The ALJ failed to explain with the requisite specificity how Dr. Vincenty's opinion is inconsistent with the record evidence. Because the ALJ determined Plaintiff's RFC, at least in part, by discounting the opinion of Dr. Vincenty, the lack of adequate explanation for the discounting makes it impossible for the Court to determine whether the RFC was correctly stated. Therefore, this matter is due to be remanded. On remand, the Commissioner shall clearly articulate reasons showing "good cause" for discounting the opinion of Dr. Vincenty, if the Commissioner chooses to do so. Lewis, 125 F.3d at 1440. Additionally, the Commissioner shall reconsider Plaintiff's RFC.

### B. Hypothetical to VE

Plaintiff contends the ALJ "fail[ed] to include all limitations in the hypothetical" that was presented to the VE. Pl.'s Mem. at 11. Specifically, Plaintiff argues the ALJ did not include the effects of Plaintiff's anxiety and the use of an assistive device. Id. at 11-12. In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See 20 C.F.R. § 416.920(a)-(f). When an ALJ relies on the testimony of a VE, "the key inquiry shifts [from the RFC assessment in the ALJ's written decision] to the adequacy of the RFC description contained in the hypothetical posed to the VE." Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished). In determining an individual's RFC and later posing a hypothetical to a VE which includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's

---

[5](...continued)
in interventional pain management." Tr. at 399. Defendant contends that because Plaintiff did not specifically challenge the Appeals Council's actions in denying review, Plaintiff has waived the opportunity in this Court to rely on evidence submitted to the Appeals Council. Def.'s Mem. at 11. The Court need not address this issue, given the finding that the ALJ's reasons for discounting Dr. Vincenty's opinion are inadequate.

impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citation omitted). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227(11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).

### 1. Anxiety

Plaintiff contends the ALJ "never included any limitations with regard to her mental health issues and more specifically the 'mild restrictions of activities of daily living, mild difficulties in maintaining social functioning[,] and mild difficulties in maintaining concentration, persistence, or pace.'" Pl.'s Mem. at 11 (quoting ALJ's Decision).[6]

The ALJ determined Plaintiff's anxiety is a non-severe impairment. Tr. at 17. To support this determination, the ALJ stated that "[t]he evidence of record shows that [Plaintiff] is not receiving any type of treatment from a mental health professional," and she "receives medication from her primary care physician[.]" Tr. at 17. The ALJ also noted that Plaintiff's

---

[6] In a review of her factual history, Plaintiff explains that on April 5, 2008, after the ALJ's unfavorable Decision, she was admitted to Tenbroeck Hospital because of suicidal ideations. Pl.'s Mem. at 4. According to Plaintiff, after her evaluation, she received a Global Assessment of Functioning Score of 55 and a diagnosis of major depressive disorder. Id. at 4. It is unclear how, if at all, Plaintiff intends for this evidence to be considered by the Court in deciding the instant issues. Because Plaintiff does not rely on this evidence in her argument regarding the failure to incorporate the effects of her anxiety in the hypothetical to the VE, see id. at 11-12, the Court does not deem it necessary to discuss such evidence in the analysis of this issue.

mental status was within normal limits during two visits with her treating physician. Tr. at 17-18 (referring to Tr. at 224, 229). Furthermore, the ALJ relied on the Mental Health Report of Mark St. Lawrence, PA-C, Plaintiff's primary care physician's assistant, see Tr. at 18, in which Mr. St. Lawrence opined Plaintiff's "[m]ood and affect" were "normal"; Plaintiff's "[t]hought process" had "no decline at this time"; Plaintiff's "[c]oncentration" and "[o]rientation" were without "decline"; and Plaintiff's "[m]emory (immediate, recent & remote)" was also without "decline[.]" Tr. at 329. According to Mr. St. Lawrence, Plaintiff's mental diagnosis is "mood swings" and her prognosis is "very good[.]" Tr. at 330.

In evaluating a claimant's mental condition, the Regulations direct the use of the psychiatric review technique. See 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied in the psychiatric review technique form ("PRTF") and is further described in the preface to section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listings. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[7] Next, the degree of functional limitation relating to such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). In determining the degree of functional limitation resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the listings are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The first three broad functional areas are rated using a five-point scale: none, mild, moderate,

---

[7] The medical findings associated with affective disorders, including anxiety, are listed in paragraph A of section 12.04. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the criteria under paragraph B do not establish that the claimant is disabled, depending on the type of mental disorder, the criteria under "paragraph C" are considered. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[8]

Next, if paragraph C does not establish that the claimant is disabled, the severity of the mental impairment is determined based on the degree of limitations in the four broad functional areas. See 20 C.F.R. §§ 404.1520a(d) and 416.920a(d); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the claimant is determined to have a severe mental impairment that does not meet or medically equal any of the impairments listed, then the claimant's RFC is assessed. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The ratings of the claimant's limitations in the four broad functional areas pursuant to the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. "The mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the [listings]." Id.

When making the more detailed assessment and itemizing the claimant's various functions in assessing RFC at steps four and five of the sequential evaluation process,

---

[8] For affective disorders, the paragraph C criteria are as follows: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication or continued need for such an arrangement." 20 C.F.R. Part 404, Subpart P, AppeIdix 1 § 12.04(c).

-14-

"[n]onexertional capacity[9] must be expressed in terms of work-related functions." Id. at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c) and 416.945(c); Pabon v. Barnhart, 273 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003). The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).

Here, as previously stated, the ALJ found at step two that Plaintiff's anxiety represents a non-severe impairment. Tr. at 17. The ALJ further found that Plaintiff "has mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation." Tr. at 18. The ALJ recognized in his Decision that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Tr. at 18.

In assessing the RFC in his Decision, the ALJ performed the required translation of Plaintiff's limitations resulting from her mental impairment from the four broad functional areas to a work-related function: the need to "avoid unusual stress." Tr. at 18. This work-related function was also conveyed to the VE in the hypothetical. Tr. at 40. Plaintiff argues

---

9 "Nonexertional capacity measures all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions." SSR 96-8p, 1996 WL 374184, at *6.

that "mild restrictions of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace" were not included in the hypothetical, Pl.'s Mem. at 11, but the inclusion of limitations in these functional areas is not required at step five of the sequential evaluation process, see SSR 96-8p, 1996 WL 374184, at *4. Rather, a translation of these limitations into practical work-related functions is required at this step, see id., which the ALJ performed by limiting Plaintiff to "avoid[ing] unusual stress," Tr. at 40-41. Plaintiff does not challenge whether the need to "avoid unusual stress" adequately accounts for her anxiety. Therefore, the Court finds no error in the ALJ's formulation of the hypothetical with respect to Plaintiff's anxiety.

### 2. Use of Assistive Device

Plaintiff argues the ALJ did not include in the hypothetical that Plaintiff requires an assistive device to walk. Pl.'s Mem. at 12. Plaintiff emphasizes that "it was never disputed that she had an assistive device." Id. Defendant essentially concedes the assistive device was not considered but argues that "any error the ALJ made in failing to recognize Plaintiff's use of a walker at the time of the hearing was harmless." Def.'s Mem. at 16. The Court need not resolve whether such error was harmless. Because this matter is due to be remanded for other reasons, on remand, the Commissioner shall ensure that the alleged use of an assistive device is adequately considered in framing the hypothetical.

## V. Conclusion

Additional explanation from the ALJ is needed to determine whether the ALJ's reasons for discounting the opinion of Dr. Vincenty are supported by substantial evidence. Furthermore, the ALJ shall ensure adequate consideration of Plaintiff's alleged use of an

-16-

assistive device when formulating the hypothetical to the VE. In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (a) Reevaluate the opinion of treating physician Dr. Vincenty and state with particularity the weight afforded to Dr. Vincenty's opinion; if the opinion is discounted, adequate reasons showing good cause for discounting it shall be provided and shall be supported by substantial evidence;
>
> (b) Reevaluate Plaintiff's residual functional capacity upon determining the weight to afford Dr. Vincenty's opinion;
>
> (c) Reevaluate the hypothetical question posed to the vocational expert with regard to the effects of Plaintiff's alleged use of an assistive device; and
>
> (d) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk of Court is directed to close the file.

3. If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval

of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2010.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record